WILLIAMS, Judge.
This is a slip and fall case. The plaintiff, Nannie Edwards Reeves, appeals a judgment rendered in favor of defendants, Harper Motors, Inc. and its insurer, dismissing her case.
On appeal, plaintiff contends the trial court erred in failing to find that the substance on the floor of the service department of Harper Motors, Inc. was a foreign substance and as such created a hazardous condition. We find no manifest error in either the trial court’s findings of fact or its conclusions derived therefrom. We affirm.
FACTS
On December 7, 1987, plaintiff accompanied her daughter, Tanya Edwards, to Harper Motors in Minden Louisiana, to have her daughter’s car repaired. While Mrs. Reeves was in the service department of Harper Motors, she turned to walk away from the service desk and slipped, causing her to-fall. Plaintiff claims while she was falling, she braced against her daughter and twisted her back and suffered other injuries.
Despite plaintiff’s claim that she fell either on motor oil or a combination of motor oil and “floor dry”, the trial court found plaintiff’s fall was a result of her own negligence. It further found the dampness on the floor was not a foreign substance and did not create a hazardous condition. The trial court opined the real cause of the accident was plaintiff’s own lack of care and attention.
DISCUSSION
The plaintiff’s first position is the trial court should have found the substance on the floor of the service department of Harper Motors was a foreign substance and as such created a hazardous condition. She submits the slippery substance was floor dry mixed with rain water and that the floor dry had been placed where it would mix with the water by Mr. Henry Harris, an employee of Harper Motors, Inc. As a result of this information, Reeves alleges she clearly sustained her burden of proving that a foreign substance was on the floor of the automobile dealership service area causing her to slip.
The general rule of appellate review of a trial court’s finding of fact is set forth in Rosell v. ESCO, 549 So.2d 840 (La.1989):
It is well settled that the court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong”, and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of *859 fact should not be disturbed upon review, even though the appellate court may feel that it’s own evaluations and inferences are as reasonable. The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. In applying the manifestly erroneous — clearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo.
When findings are based on determinations regarding the credibility of witnesses, the manifest error — clearly wrong standard demands great deference to the trier of fact’s findings; for only the fact-finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
Id. at 844-845. (citations omitted) (footnote omitted).
In the instant suit, there was conflicting testimony and the trial court made findings of fact based upon the testimony of the witnesses it found to be the most credible. There are no documents or objective evidence to contradict those witnesses. Based on its findings, supported by the entirety of the evidence before it, including the physical demonstrations by the witnesses, the court concluded that the plaintiff failed to carry her burden of proof that she was injured because there was a foreign substance causing a hazardous condition on the premises. The court further found that the defendant acted reasonably in fulfilling its duty to keep the premises free of hazardous or foreign substances.
Under the principles set forth in Ro-sell, supra, and the jurisprudence cited therein, in order for this Court to find merit in plaintiff’s assignment of error upon which it could reverse the opinion of the trial court, the plaintiff must show, and this Court must find, that there is manifest error in the trial court’s findings of fact and consequent finding of no liability. That this court might make a different credibility call or draw a different inference from the evidence is not a sufficient basis for reversal, if it finds that the trial court’s evaluations are reasonable conclusions from the evidence as a whole.
Here, the trial court found that Mr. Riser was no longer employed at Harper Motors and had no motive to falsely testify. The trial court further found his testimony to be the most credible of all the conflicting testimony. Certainly that finding is reasonable. Mr. Riser saw the plaintiff’s leg “give”, saw her when she “slipped”, and immediately inspected the area. He did not see any puddles, standing water, oil, grease, transmission fluid, floor dry, or other substance on the floor where the plaintiff slipped. Although Mr. Hickey did not see the plaintiff slip, he was standing near Mr. Riser and turned when Mr. Riser asked the plaintiff if she was all right. Mr. Hickey also inspected the area and corroborated Mr. Riser’s description of the floor; that it was free of foreign substances, and that there was only dampness, but no water puddles, present. There was a normal procedure to squeegee water when it was present, and there was not enough water to squeegee on that day.
*860 Plaintiff asserts that “Henry Harris was very certain that he had placed floor dry oh the floor earlier that morning.” Despite plaintiffs assertions to the contrary, Mr. Harris did not testify that he put floor dry on the garage pavement at any time. Furthermore, Mr. Harris’ use of floor dry was confined to the inside offices where he worked cleaning up those offices. From a review of the record, it appears Mr. Harris was not extremely certain about anything except his job duties of cleaning the offices and detailing the automobiles.
In any event, Mr. Hickey and Mr. Riser testified that floor dry does not make the floor slick.
A review of the trial transcript reveals that the trial court was correct in stating that although Mr. Harris’ trial testimony was unclear and in conflict with his previous deposition testimony, he remained positive there was no floor dry on the floor area where the plaintiff slipped. At the very least, the trial court’s finding is certainly a reasonable interpretation and inference drawn from the evidence contained in the record.
It is reasonable for the trial court to make its findings based on the testimony of witnesses which it found to be more credible and to place more weight on their testimony than that of plaintiff and her daughter, who may very well have been viewed-by the trial court as giving self-serving testimony. We find no manifestly erroneous or clearly wrongful finding by the trial court on this issue, and thus, no reversible error.
Plaintiff’s next position is that the trial court had no evidence to support its finding that the real cause of the plaintiff’s accident was plaintiff’s own lack of care.
The trial court found, and this court agrees, that the standard of care to be applied to this case is contained in Louisiana Revised Statute 9:2800.6, which was enacted in 1988. This act stated that it applied to all cases tried after the July 18, 1988 effective date, and it was therefore in effect at the time of this trial. The 1990 amendment to Revised Statute 9:2800.6 became effective September 1, 1990, but it provided that the 1990 amendment applied only to causes of action which arose on or after the effective date. Therefore, the 1988 version of the statute applies to this case. See Hall v. Petro of Texas, Inc., 580 So.2d 420, 422 n. 2 (La.App.2d Cir.1991), writ denied 584 So.2d 682 (La.1991). See also Crandell v. Winn-Dixie Louisiana, Inc., 580 So.2d 967 (La.App. 5th Cir.1991) (applying the 1988 statute to a 1987 accident).
Louisiana Revised Statute 9:2800.6, as enacted in 1988, provided:
§ 2800.6. Liability of a merchant for injuries sustained by a person while on the premises of the merchant.
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a suit for damages by a person who has suffered damages as the result of a hazardous condition while on the merchant’s premises, the person must prove that the accident was caused by a hazardous condition. The burden of proof then shifts to the merchant to prove that he acted in a reasonably prudent manner in exercising the duty of care he owed to the person to keep the premises free of any hazardous conditions.
C. In exculpating himself from liability under this Subsection, the merchant need not introduce the testimony of every employee of the merchant or any particular proportion thereof, but is only required to introduce the testimony of an employee shown to have actually created the hazardous condition and those employees and management personnel whose job responsibilities included inspection or cleanup of the area where the accident giving rise to the damages occurred.
D. “Merchant” means one whose business is to sell goods, foods, wares, or *861 merchandise at a fixed place of business.
Plaintiffs initial burden under this statute is to prove by the preponderance of the evidence that her injuries were caused by a foreign substance which created a hazardous condition on the premises. The testimony at trial revealed that the water was not placed on the floor by defendant’s employees. Instead it came from moisture due to rain and humidity, or from droplets from automobiles entering the service area. Despite plaintiffs assertion to the contrary, the witnesses testified that there was no oil or “floor dry” on the floor.
The plaintiff had recently traversed the same area, and the trial court found her own negligence caused her to slip. The trial court cited Davis v. Winningham Datsun-Volvo, Inc., supra 493 So.2d 719 (La.App.1986) in reaching its decision on this issue:
The puddle, according to plaintiffs witnesses, was apparent when traversing avoided by the plaintiffs daughter. There was nothing to distract the plaintiffs attention from the driveway such as a store display. Thus, based upon the record in its entirety, it appears that the accident was caused by the inattentiveness of the plaintiff in failing to take precautions to protect herself and not due to any fault attributable to the defendant.
(R. p. 40).
Although plaintiff argued that the lighting conditions were inadequate, the trial court rejected this contention. Plaintiff was in an area often traversed by customers and employees, and plaintiff and her daughter had travelled that same area only a few minutes before the accident. The floor was in the same condition then, and it was plainly visible to plaintiff both times as she travelled it. The service drive area where plaintiff slipped was not an open shelf display area or self-service area designed to divert the attention of the plaintiff.
The trial court also noted that plaintiff had a pre-existing degenerative condition in her right knee (the right foot slipped) for over six years prior to the accident, which had been diagnosed as chondromalacia and osteoarthritis. Dr. William Wade Fox’s deposition testimony was that he had seen Mrs. Reeves on four occasions prior to the accident beginning March 31, 1981, for a left ankle problem. The next time he had seen her was on December 4, 1981, for a right knee problem. He diagnosed Mrs. Reeves as having chondromalacia of the patella. Dr. Fox again saw her on December 28th, 1981. He injected the knee with cortisone both times. The fourth time that Dr. Fox saw Mrs. Reeves before this accident was on May 1, 1986, for heel spurs in both feet. She had a problem with her left leg, just above her ankle on June 26, 1990. Mrs. Reeves has also experienced other falls not related to her right knee. On February 2, 1990, she complained to Dr. Fox that she had injured her right ankle when she fell off a curb on January 27, 1990. Dr. Fox stated the only reason plaintiff gave for the accident was the difference in the height of the curb and the street. Plaintiff also was considerably overweight at the time of the accident and at the time of trial. According to Dr. Fox, obesity will aggravate chondromalacia. The trial court based its decision on the evidence presented and the testimony of the uninterested witness. His conclusion that plaintiff’s medical condition contributed to her fall is not clearly wrong.
Based on the evidence presented and a review of the entire record, we cannot say the trial court’s finding that plaintiff’s negligence was the cause of her fall and subsequent injuries was clearly wrong. Consequently, we find no manifest error in the trial court’s conclusion that the plaintiff had not borne her burden of proving that the accident was caused by a hazardous condition on the premises.
Because we find defendants were not liable for plaintiff’s injuries, we need not address the issue of quantum raised by the plaintiff.
CONCLUSION
For the above stated reasons, we affirm the trial court’s judgment dismissing plain *862 tiff’s claims. Costs on appeal and below are taxed to the plaintiff.
AFFIRMED.
NORRIS, J., concurs with written reasons.